MHN

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| UAL CORPORATION, et al., | ) | |
| | ) | |
| Reorganized Debotors. | ) | No. 09 C 5225 |
| | ) | |
| | ) | Judge John W. Darrah |
| REGEN CAPITAL I, INC., | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| UAL CORPORATION, | ) | |
| | ) | |
| Appellees. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court is the appeal of ReGen Capital I, Inc. ("ReGen") from the July 30, 2009 Order of the bankruptcy court disallowing ReGen's Amended Cure Claim in the amount of $4,272,555.17 against the Chapter 11 estate of United Airlines, Inc. ("United").

### BACKGROUND

United filed for bankruptcy under Chapter 11 on December 9, 2002. Prior to that date, United, and AT&T had entered into contracts under which AT&T provided various telecommunications services to United. On January 16, 2004, AT&T filed a proof of claim, asserting a general unsecured claim in the amount of $5,423,898.67, which was designated claim number 43490 ("Claim 43490"). Claim 43490 was later reduced to $4,898,728, following a review of United's books and records.

ReGen is a New York financial firm that operates as a claims trader. Claims trading is "a practice in which a creditor sells its claim against a bankrupt debtor to a third party in exchange for cash or something else of value." *In re Kreisler*, 546 F.3d 863, 864 (7th Cir. 2008).

On February 14, 2004, ReGen filed a "Notice of Transfer of Claim"and a "Notice of Assignment of Claim." The latter states that pursuant to an agreement dated January 1, 2002 (the "Assignment Agreement"), AT&T had sold Claim 43490 to ReGen. The Assignment Agreement, which is a rolling assignment of claims in different bankruptcy cases, defined claims assigned to ReGen as follows:

> "Claim(s)" means any general pre-petition unsecured claim of AT&T against a debtor together with interest, in any, payable thereon from and after the Effective Date, and any actions, claims, lawsuits or rights of any nature whatsoever, whether against the debtor or any other party, arising out of or in connection with the Claim, including, Assignor's rights to receive from and after the Effective Date, any cash, securities, instruments, and/or other property as distributions on the Claim.

On January 18, 2006, United filed its Plan, which provided for the rejection of all executory contracts except those identified in the Plan. Among those contracts listed were ten of AT&T's executory contracts. On March 2, 2006, ReGen submitted a "Request for Payment of Cure With Respect to Certain Executory Contracts with AT&T Corp. Assumed Pursuant to Debtors' Second Amended Joint Plan of Reorganization" (the "Original Cure Claim"). According to ReGen, the Original Cure Claim was a reassertion of Claim 43490 and sought priority payment based on United's assumption of the AT&T Contracts. The Original Cure Claim asserted the cure amount of $4,272,555.17, which ReGen calculated by subtracting $626,172.83 – the value of new common stock in UAL Corporation ReGen received – from the total amount owed under Claim 43490.

2

On October 15, 2007, United filed its Fifty-Second Omnibus Objection to Claims, in which it sought to expunge ReGen's Original Cure Claim. On June 4, 2008, United filed a Notice of Intent to Reject Contracts, in which United stated its intent to reject the AT&T Contracts.[1] The bankruptcy court dismissed ReGen's Original Cure Claim. ReGen filed an Amended Cure Claim. After a hearing on July 29, 2009, the bankruptcy court disallowed the claim.

## ANALYSIS

This Court reviews the bankruptcy court's factual findings for clear error; questions of law are reviewed *de novo*. *McFarlane v. Life Ins. Co. of North America*, 999 F.2d 266, 267 (7th Cir. 1993); *In re FedPak Systems, Inc.*, 80 F.3d 207, 211 (7th Cir. 1996). While the bankruptcy court's interpretation of the Assignment Agreement is a question of law, the weight given by the bankruptcy court to extrinsic evidence used in interpreting that agreement is an issue of fact, subject to review for clear error. *See GNB Battery Technologies, Inc. v. Gould, Inc.*, 65 F.3d 615, 624 (7th Cir. 1995).

The first issue disputed by the parties is the nature and extent of the rights transferred from AT&T to ReGen by the Assignment Agreement. ReGen argues that AT&T assigned any cure claim of AT&T arising out of any general prepetition unsecured claims AT&T had against United, including Claim 43490. United counters that ReGen never acquired any of AT&T's

---

[1] United's Plan permitted United to reject any contract rather than pay any amount required to cure defaults in the contract being assumed:
   "The Debtors and Reorganized Debtors reserve the right to reject any executory contract or unexpired lease no later than fifteen (15) days after the later of (i) the Debtors or Reorganized Debtors and the counterparty to such executory contract or unexpired lease agree in writing to the amount of the Cure, or (ii) the entry of a Final Order establishing Cure."

contractual rights and, thus, could not demand cure for any contract assumed by United. Rather, United argues, ReGen merely purchased AT&T's general prepetition unsecured claims.

At the July 29, 2009 hearing on ReGen's Amended Cure Claim, the bankruptcy court rejected ReGen's position with respect to the Assignment Agreement. Summing up what it took to be ReGen's position, the court stated: "As I understand it, your theory is that AT&T assigned the rights to whatever amounts were ultimately found to be owing on the basis of whatever services it provided prepetition so that if the contracts in issue were assumed, requiring United to make cure payments as to those services that were rendered prepetition, ReGen would have the right to an administrative claim for the cure payments . . . ." Counsel for ReGen affirmed that the court had correctly stated his position.

Asked what language in the Assignment Agreement supported ReGen's position, ReGen's counsel directed the court to the definition of "Claim(s)," quoted above, arguing that the language "and any actions, claims, lawsuits or rights of any nature whatsoever . . . arising out of or in connection with the Claim" supported ReGen's interpretation of the assignment. The court rejected this argument, stating "the right to a cure does not arise out of a claim. It arises out of a contract." The bankruptcy court found the Assignment Agreement assigned only general prepetition unsecured claims. Therefore, the cure claim asserted by ReGen did not fall within the Assignment Agreement.

ReGen argues that the bankruptcy court's interpretation of the Assignment Agreement was erroneous. As it did before the bankruptcy court, ReGen argues that the language "and any actions, claims, lawsuits or rights of any nature whatsoever . . . arising out of or in connection with the Claim" encompasses the cure claim asserted against United. This is so, ReGen argues,

4

because the cure claim arises out of the general unsecured claim assigned to it by AT&T. Specifically, ReGen argues that the general unsecured claim became a cure claim when United assumed the AT&T contracts.

The Court agrees with the bankruptcy court's interpretation of the Assignment Agreement. As United now argues, the only reasonable interpretation of the Assignment Agreement is that ReGen purchased "general prepetition unsecured claims" and the right to recover any distribution made on account of those general prepetition unsecured claims – or the right to sue if distributions were not made. Furthermore, as the bankruptcy court held, the right to a cure does not arise out of a claim. Rather, the right to demand cure arises from preexisting contracts. *See In re UAL Corp.*, 346 B.R. 456, 467 (Bankr. N.D. Ill. ,2006). Thus, ReGen's proposed reading of the Assignment Agreement, attempting to include the right to cure in "rights . . . arising out of or in connection with" a general prepetition unsecured claim, must fail.

As United points out, it makes no sense that ReGen would be entitled to cure since it has no obligations under the AT&T contracts. The curing of pre-assumption default, as well as the debtor's continued performance under the contract, is the flip-side of the contracting party's continued performance of an assumed contract. *See In re Conseco, Inc.*, 330 B.R. 673, 687 (Bankr. N.D. Ill. 2005.) Here, ReGen does not argue that AT&T assigned its right and obligations under its contracts with United to ReGen. Indeed, the Assignment Agreement makes clear that the underlying rights and obligations of the underlying contracts were not transferred to ReGen. Thus, ReGen cannot be entitled to cure.

Moreover, the bankruptcy court's determination regarding a July 6, 2005 letter from an AT&T employee in construing the agreement was not clear error. Under New York law, under

5

which the Assignment Agreement is governed, "extrinsic and parol evidence is not admissible to create an ambiguity in a written agreement which is complete and clear and unambiguous upon its face." *R/S Associates v. New York Job Development Authority*, 98 N.Y.2d 29, 33 (N.Y. 2002) (internal citation omitted). Here, the agreement is clear and unambiguous. Furthermore, the bankruptcy court's statement that, if it were to consider the letter, it would give it no weight, was not unreasonable, considering that three years passed from the date of the agreement to the date of the letter.

The bankruptcy court held in the alternative that ReGen was not entitled to cure because United rejected the AT&T contracts. The bankruptcy court found that United had exercised its right under the Plan to reject the contracts once ReGen asserted that it was entitled to cure. The bankruptcy court noted that this was consistent with the provision of the Plan, noted above, that gave United up to fifteen days after a cure amount was determined to reject the contract. On this issue also, the Court finds the bankruptcy court's reasoning persuasive. Therefore, the Court affirms the bankruptcy court's ruling on this basis as well.

## CONCLUSION

For the foregoing reasons, the bankruptcy court's ruling is affirmed.

Dated: 2-2-10

JOHN W. DARRAH
United States District Court Judge